**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

V.B.,

      *Plaintiff,*

v.

UNITED STATES OF AMERICA,
FELIX SYLVESTER WILDER, JR.,

      *Defendants.*

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Defendant FELIX WILDER, JR., is a serial sexual predator who, while employed as a correctional officer with the Federal Bureau of Prisons ("BOP"), raped, sexually abused, sexually exploited, and unlawfully restrained multiple women incarcerated at the Federal Correctional Institution in Aliceville, Alabama ("FCI Aliceville"). Among his victims was Plaintiff V.B., whom Defendant WILDER repeatedly raped and sexually abused while she was confined at FCI Aliceville. Defendant WILDER forced Plaintiff to endure humiliating and degrading sexual acts to which she lacked both the legal and volitional capacity to consent while confined in an institution from which she had no meaningful ability to escape. On at least one occasion, Defendant WILDER forced Plaintiff to engage in an unprotected sexual act, exposing her to the risk of contracting a sexually transmitted

infection. Following the assaults, Plaintiff was unable to obtain timely and adequate medical care.

Defendant WILDER did not prey upon Aliceville prisoners in a vacuum. Before Defendant WILDER sexually assaulted Plaintiff, the BOP knew or reasonably should have known that he had raped and sexually abused other women incarcerated at FCI Aliceville. Yet, the BOP failed to investigate, intervene, and remove Defendant WILDER from positions of authority over incarcerated women, or otherwise comply with its own mandatory policies designed to detect, prevent, and respond to staff sexual abuse. These BOP failures allowed Defendant WILDER's abuse to continue and exposed Plaintiff to a foreseeable and entirely preventable risk of sexual violence. This case is not about one bad apple; it is about the BOP's negligent disregard for its own policies and breach of its duty to protect the prisoners in its care.

By and through her attorneys, V.B. brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1591, 1594, and 1595, applicable Alabama law, and other applicable law. As set forth herein, V.B. suffered severe physical, psychological, and dignitary injuries as a result of Defendant WILDER's repeated sexual abuse. The BOP compounded those injuries by failing to protect V.B. from Defendant WILDER, failing to provide timely and adequate medical and mental

health care following the rapes, and failing to promptly investigate the abuse. In support of her claims, V.B. alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b), as this action involves claims against, *inter alia*, the United States arising under the laws of the United States.

2. Plaintiff's claims are also predicated, in part, upon the FTCA, 28 U.S.C. § 2671 *et seq.*, which authorizes actions seeking relief against the United States.

3. The Court has personal jurisdiction over the Defendants because the alleged incidents occurred within the confines of the State of Alabama.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the boundaries of this District, in the County of Pickens.

## THE PARTIES

5. At all times relevant hereto, BOP held Plaintiff in custody at the FCI Aliceville facility located at 11070 Highway 14, Aliceville, Alabama 35442.

6. While acting and failing to act as alleged herein, Defendants had custody and control of Plaintiff, who was dependent upon Defendants for personal security, safety, medical care, mental health care, access to rehabilitative programming, and personal necessities.

7.     Plaintiff currently remains in the custody of the BOP.

8.     Defendant United States of America (hereinafter "United States") is the appropriate defendant for Plaintiff's claims under the Federal Tort Claims Act.

9.     The United States is a sovereign entity that has waived its immunity for certain claims, including the claims set forth herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees that occur within the scope of their employment.

10.    At all times relevant hereto, Defendant United States, acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at FCI Aliceville and was responsible for the hiring, retention, training, supervision, management, discipline, and conduct of all BOP personnel, including but not limited to Defendant WILDER.

11.    In addition, at all relevant times, United States was responsible for enforcing the rules of the BOP and for ensuring that BOP personnel obey the Constitution and laws of the United States.

12.    Defendant WILDER was an officer at FCI Aliceville during the time relevant to events described herein and is sued in his individual capacity.

13.    Defendant United States, acting through the BOP, hired Defendant WILDER, to serve as a "correctional officer" and "law enforcement officer" within the meaning and powers of 28 U.S.C. § 2680(h).

- 4 -

14.    In performing the acts or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with negligence, and with deliberate indifference to the rights and personal security of Plaintiff.

15.    Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to her constitutionally and statutorily protected rights.

16.    Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that her rights were adequately protected while in custody.

17.    At all times relevant hereto, Defendant WILDER was the agent, representative, or employee of the Defendant United States.

18.    At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of his or her authority, whether actual or apparent.

19.    Accordingly, each Defendant is jointly and severally liable to Plaintiff.

## CONDITIONS PRECEDENT TO CLAIMS UNDER THE FEDERAL TORT CLAIMS ACT

20.    Plaintiff brings claims under the Federal Tort Claims Act, as asserted against the United States of America.

21.    Plaintiff exhausted these claims against the United States in accordance with the administrative exhaustion requirements of the FTCA.

22.    Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Aliceville in the sum of $10,000,000.00.

23.    BOP received her administrative claim on July 17, 2025.

24.    By January 17, 2026, six months after BOP received Plaintiff's administrative claim, BOP had neither accepted nor rejected the claims.

25.    Pursuant to 28 U.S.C. § 2675(a), Plaintiff considers this failure to act as a final denial of the claims.

## JURY DEMAND

26.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims in this action that are so triable.

## FACTUAL ALLEGATIONS

**I.    Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct.**

27.    Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301 *et seq.* ("PREA") to establish national standards for preventing and investigating the sexual abuse of federally incarcerated people.

28.    PREA required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities. *See* 34 U.S.C. § 30307.

29.    In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape." *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).

30. These regulations were immediately binding on BOP facilities, including FCI Aliceville. *Id.*

31. The BOP's policies are contained in documents called "Program Statements" which set forth rules and procedures that all BOP employees are required to follow. The Program Statements relevant to V.B.'s causes of action are as follows:

### BOP Program Statement 3420.11 – Standards of Employee Conduct

32. Program Statement 3420.11 describes the duties and responsibilities of all BOP employees.

33. Program Statement 3420.11 mandates that: "An employee shall not engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as consensual sex between staff and inmates."

34. Program Statement 3420.11 defines sexual contact and the consequences of any violations.

35. Program Statement 3420.11 states that: "Employees are subject to administrative action, up to and including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature."

36.    Program Statement 3420.11 states that: "Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened. Sexual contact is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person. All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution."

37.    Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11.

38.    As a condition of his employment, Defendant Wilder did or should have signed acknowledgements that he received a copy of Program Statement 3420.11.

### BOP Program Statement 5324.12 - Sexually Abusive Behavior Prevention and Intervention

39.    BOP Program Statement 5324.12 is the controlling BOP policy addressing the prevention of, and intervention upon, sexually abusive behavior. It is disseminated agency-wide and applies to all facilities operated by the BOP and every staff member working within each correctional facility.

40.    BOP Program Statement 5324.12 lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates particular staff and agency reporting duties with respect to sexually abusive behavior, including concerning incidents or possible incidents of sexual abuse or sexual harassment.

41.    BOP Program Statement 5324.12 contains directives requiring BOP officials to timely report and investigate any information regarding sexual assault in any of its facilities.

42.    BOP Program Statement 5234.12, § 115.13 requires that BOP facilities, including FCI Aliceville, take certain steps "to protect inmates against sexual abuse" including the use of "video monitoring" where warranted.

43.    BOP Program Statement 5234.12, § 115.13, requires that FCI Aliceville consider specific matters in formulating a plan "to protect inmates against sexual abuse." Those specific matters include consideration of: "All components of the facility's physical plant (including 'blindspots' or areas where staff or inmates may be isolated)[.]"

44.    BOP Program Statement 5324.12, § 115.61 requires that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or, where appropriate, in accordance with the Program Statement [3420.11,] Standards of Employee Conduct."

45.    BOP Program Statement 5324.12, § 115.71 also contains directives regarding sexual assault investigations.

46. BOP Program Statement 5324.12, § 115.71 requires "prompt[], thorough[], and objective[]" investigations into all reports of sexual abuse or harassment.

47. BOP Program Statement 5324.12, § 115.71 provides a reporting chain following sexual abuse allegations: the Warden must be immediately notified, who must notify the Regional Director and the Office of Internal Affairs, who must notify the Office of the Inspector General ("OIG"), and where appropriate, the Federal Bureau of Investigation ("FBI").

48. BOP Program Statement 5324.12, § 115.71 requires that the investigation be "documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings."

49. BOP Program Statement 5324.12, § 115.71 requires that the investigation must "include an effort to determine whether staff actions or failures to act contributed to the abuse."

50. BOP Program Statement 5324.12, §§ 115.61(a), 115.71 require reporting of sexual abuse incidents no later than 24 hours and the immediate investigation of reports.

51. Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including

interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id*. § 115.71(b)-(c).

52.    The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id*. § 115.71(e).

53.    Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id*. § 115.71(f).

54.    BOP Program Statement 5324.12 implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and provides guidelines to address prohibited and/or illegal sexually abusive behavior, specifically including "Staff perpetrator against inmate victim."

55.    BOP Program Statement 5324.12, § 115.61(a) quotes 28 C.F.R. § 115.61's requirement that the BOP "shall require all staff to report immediately and according to [BOP] policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the [BOP]; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."

56.    BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual

abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

57. Inmates, employees, and members of the public may file a complaint at the BOP facility where an incident of sexual abuse occurred; through BOP's Office of Internal Affairs; or with the Department of Justice OIG.

58. In accordance with the agency's own Standards of Employee Conduct, BOP employees must report any violation of those Standards, or any rule or law within one business day of the incident to their Chief Executive Officer (CEO), OIA, or the OIG. Decisions regarding disciplinary action in cases where the allegations are sustained are managed by BOP's Human Resources Management (HRM) and BOP's Office of General Counsel. "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id*. § 115.71(j).

59. Substantiated allegations of potentially criminal conduct must be referred for prosecution, and the agency must retain written reports of investigations for five years beyond the end of the staff member's employment. *Id*. § 115.71(h)–(i).

60. After investigating an incarcerated person's allegation that they were abused, BOP must inform that person of whether their allegation was found to be

substantiated, unsubstantiated, or unfounded, even if the investigation was completed by another agency. *Id*. § 115.73(a)–(b).

61. The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *Id*. § 115.76(b).

62. PREA also includes measures designed to prevent staff retaliation following incarcerated persons' reports of abuse.

63. PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . .who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated people who report abuse. *Id*. § 115.67.

64. These protective measures include strict limits on the use of administrative segregation: "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and . . . there is no available alternative means of separation from likely abusers. If a facility cannot conduct such an assessment immediately, the facility may" hold the individual in segregated housing for "less than 24 hours while conducting the assessment." *Id*. § 115.43(a).

65. Any incarcerated person placed in protective custody for this purpose "shall have access to programs, privileges, education, and work opportunities to the extent possible." *Id*. § 115.43(b).

**BOP Program Statement 3420.14, Sec. 8 – Standards of Employee Conduct Related to Contraband**

66.    BOP Program Statement 3420.14, Section 8. Introduction of Contraband provides: "Introducing or attempting to introduce contraband into or upon the grounds of any federal correctional institution or taking or attempting to take contraband out of it, without the CEO's knowledge and consent, is prohibited and may result in appropriate disciplinary action up to and including removal."

67.    The Program Statement adopts the regulatory definition of contraband found in 28 C.F.R. § 500.1(h): "Material prohibited by law, or by regulation, or material which can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution."

## II.    BOP Failed to Enforce Mandatory Policies Designed to Prevent Staff Sexual Abuse.

68.    BOP maintained mandatory policies governing the prevention, reporting, investigation, and response to staff sexual abuse of incarcerated persons, including policies implementing the Prison Rape Elimination Act ("PREA").

69.    Those policies required BOP employees to take affirmative steps to prevent staff sexual abuse, promptly investigate allegations of misconduct, protect incarcerated persons from retaliation, provide confidential reporting mechanisms and access to outside victim services, and remove employees who posed a threat to inmate safety.

- 14 -

70.    Despite these mandatory duties, BOP employees repeatedly failed to comply with their own Program Statements, regulations, and PREA implementing standards.

71.    Those failures included inadequate staff training, ineffective supervision of correctional officers, the absence of confidential reporting mechanisms, failures to conduct timely administrative investigations, misuse of administrative segregation following reports of abuse, retaliation against victims, and the failure to provide meaningful access to medical, mental health, and victim advocacy services.

72.    Before Defendant WILDER sexually assaulted Plaintiff, BOP officials had actual knowledge that Defendant WILDER posed a substantial risk of committing sexual misconduct against incarcerated women because he was already under investigation for similar misconduct at FCI Aliceville.

73.    Rather than removing Defendant WILDER from contact with incarcerated women pending the investigation, BOP transferred him to Aliceville's adjacent satellite camp where security measures and staff supervision were more limited.

74.    At all relevant times, BOP employees were responsible for the safekeeping, protection, care, supervision, and security of individuals incarcerated

at FCI Aliceville, as well as the hiring, training, supervision, and discipline of correctional staff.

75.    BOP employees knew, or reasonably should have known, that Defendant WILDER had sexually abused incarcerated women before Plaintiff was assaulted and that additional women remained at risk if he continued to have authority over inmates.

76.    Despite that knowledge, BOP employees failed to remove Defendant WILDER from inmate contact, failed to adequately investigate prior allegations, failed to protect known victims, failed to prevent retaliation against reporting inmates, and failed to take other mandatory actions required by BOP policy.

77.    Multiple complaints concerning Defendant WILDER's sexual abuse were reported to BOP officials before Plaintiff's assaults. Pursuant to PREA implementing regulations and mandatory BOP policy, those complaints were required to be reported to institutional leadership and investigated.

78.    Had BOP employees complied with those mandatory duties by timely investigating the complaints, removing Defendant WILDER from inmate contact, and protecting incarcerated women from further abuse, Plaintiff would not have been repeatedly sexually assaulted.

79.    The BOP's repeated failures to comply with its mandatory policies and procedures were a direct and substantial cause of Plaintiff's injuries.

80. In March 2026, the United States charged Defendant WILDER in the United States District Court for the Northern District of Alabama with federal crimes arising from his sexual abuse of women incarcerated at FCI Aliceville. *See United States v. Wilder*, No. 7:26-cr-00075-EGL-HNJ (N.D. Ala. 2026).

### III. Defendant Wilder Used His Authority as a Correctional Officer to Repeatedly Rape and Sexually Abuse Plaintiff V.B.

81. V.B. began serving her BOP sentence in October 2023 and was designated to Aliceville FCI.

82. V.B. first encountered Defendant WILDER at FCI Aliceville in approximately Fall of 2023.

83. Defendant WILDER began grooming Plaintiff by engaging her in flirtatious conversations, making sexually explicit comments about her body, and offering to smuggle contraband into the institution for her.

84. Defendant WILDER offered Plaintiff nicotine vaping devices, alcohol, cigarettes, and other prohibited items.

85. Defendant WILDER knew or should have known that introducing contraband into FCI Aliceville violated BOP Program Statement 3420.14, Section 8.

86. Defendant WILDER instructed V.B. on how to avoid BOP cameras and detection when accepting contraband from him.

87.    Defendant WILDER exploited the very contraband BOP prohibited to establish and maintain a coercive relationship with Plaintiff and to extract repeated sexual acts from her.

88.    Defendant WILDER used those offers of contraband to foster Plaintiff's trust, create indebtedness, exploit her custodial dependence, and coerce her into submitting to sexual acts.

89.    V.B. told Defendant WILDER that she would rather simply pay him money for the contraband because she was not interested in a sexual relationship with him.

90.    In approximately December 2023, Defendant WILDER isolated Plaintiff in a prison storage area, where he required that she perform oral sex on him instead of paying money for the contraband he had smuggled into the institution.

91.    Defendant WILDER groped V.B. and coerced her to perform oral sex on him.

92.    Defendant WILDER did not use a condom when he forced V.B. to perform oral sex.

93.    Defendant WILDER forcibly penetrated Plaintiff's vagina with his penis.

94.    Defendant WILDER repeatedly raped Plaintiff. On at least one occasion he smuggled a condom into FCI Aliceville and used it during the assault.

95.    The BOP failed to discover Defendant WILDER was smuggling contraband into the prison and/or it failed to undertake corrective disciplinary action for WILDER's contraband smuggling.

96.    Around Christmas 2023, Defendant WILDER again offered to smuggle alcohol into the institution for Plaintiff.

97.    Defendant WILDER recruited other incarcerated individuals to act as lookouts while he sexually assaulted Plaintiff.

98.    After isolating Plaintiff from other prisoners and staff, Defendant WILDER raped her in exchange for the smuggled contraband.

99.    The BOP failed to discover Defendant WILDER was isolating V.B. in areas of the prison where he would rape her undetected and/or BOP staff failed to report the isolations and sexual abuse.

100.    Pursuant to BOP Program Statement 3420.11 and the Prison Rape Elimination Act ("PREA"), any sexual contact between a correctional officer and an incarcerated person constitutes staff sexual abuse regardless of the incarcerated person's apparent acquiescence. Plaintiff therefore lacked the legal capacity to consent to Defendant WILDER's sexual acts.

101.    Defendant WILDER exploited his position as a correctional officer by promising to warn Plaintiff before cell searches so she would not report the assaults.

## IV. Defendant Wilder and Other BOP Employees Prevented V.B. From Receiving Confidential Medical Care and Reporting the Abuse.

102. Plaintiff felt frightened and feared retaliation if she reported the incident to Aliceville FCI staff or BOP officials.

103. After Defendant WILDER sexually abused V.B., she was placed in the prison's Segregated Housing Unit.

104. A prisoner may report medical concerns, including sexual abuse, to medical staff at the prison.

105. Plaintiff was afraid to seek medical attention after the sexual abuse, which included unprotected oral sex and potential exposure to sexually transmitted infections.

106. V.B. was aware that Defendant WILDER's wife worked as a nurse in the prison's medical unit.

107. Defendant WILDER's wife, who worked as a nurse at FCI Aliceville, mocked Plaintiff after the assaults and referred to her as a "bitch."

108. Defendant WILDER's wife also disclosed Plaintiff's confidential PREA complaint to other inmates, stating words to the effect of, "That bitch put a PREA on my husband."

109. On other occasions, while working as a BOP nurse, Defendant WILDER's wife intentionally withheld Plaintiff's prescribed medication and other medical treatment.

110. The BOP subsequently transferred V.B. from Aliceville FCI to another BOP facility.

111. BOP inmates are allowed to take courses within the prison to reduce the amount of custodial time they are required to serve.

112. As a result of her transfer to a different facility, V.B. has lost her place on the waiting list for prison classes.

113. After V.B. was transferred from Aliceville FCI, she reported Defendant WILDER's sexual abuse to FBI agents and officials within the United States Department of Justice.

114. As a direct result of Defendant WILDER's repeated sexual assaults and BOP negligence, Plaintiff now suffers from chronic anxiety, depression, insomnia, nightmares, hopelessness, and severe emotional distress.

115. While Plaintiff has been incarcerated, she has not been provided with access to adequate mental health care providers, adequate medical testing for STIs or other sexual abuse-related healthcare, or other necessary treatment services.

116. The BOP has not tested V.B. for sexually transmitted diseases since the rapes occurred.

117. Though Plaintiff cooperated with the investigation into her abuse and believed her PREA report would be confidential, she has faced retaliation, including the revelation of her PREA complaint to other correctional officers and inmates.

118. Even after her administrative transfer to other facilities, inmates and staff at her new facilities were made aware that Plaintiff had filed a PREA complaint.

119. Defendants and/or those acting on their behalf disclosed Plaintiff's PREA complaint to retaliate against her.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*Plaintiff Against the United States*
(Negligence – Alabama common law – Failure to Protect)

120. Plaintiff incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

121. Plaintiff brings this claim against Defendant United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for the negligent acts and omissions of employees of the Federal Bureau of Prisons ("BOP") acting within the scope of their employment.

122. Pursuant to 18 U.S.C. § 4042(a), the United States owed Plaintiff a statutory duty to provide for her safekeeping, care, protection, and security while she was incarcerated at FCI Aliceville.

123. Alabama law likewise imposes on custodians a duty to exercise reasonable care to protect persons in their custody from reasonably foreseeable harm.

124. In addition to these general duties, the United States, through the BOP, was required to comply with mandatory duties imposed by BOP Program Statements and PREA implementing regulations governing the prevention, detection, investigation, reporting, and response to staff sexual abuse of incarcerated persons.

125. Before Defendant WILDER sexually assaulted Plaintiff, BOP officials knew, or in the exercise of reasonable care should have known, that Defendant WILDER posed a substantial risk of sexually abusing incarcerated women because allegations of similar misconduct by Defendant WILDER had already been reported.

126. Despite that knowledge, the United States failed to remove Defendant WILDER from positions of authority over incarcerated women, failed to properly train him, failed to adequately supervise his interactions with inmates, and instead permitted him to continue exercising custodial authority over prisoners.

127. The negligent acts and omissions of the United States were a direct and proximate cause of Plaintiff's injuries, including physical injury, psychological trauma, severe emotional distress, anxiety, depression, insomnia, nightmares, humiliation, loss of dignity, diminished quality of life, medical expenses, and other economic and non-economic damages.

128. The United States is liable to Plaintiff under the FTCA for the negligent acts and omissions of its employees acting within the scope of their employment.

**SECOND CLAIM FOR RELIEF**
*Plaintiff Against the United States*
(Negligence – Alabama common law – Failure to Supervise)

129. Plaintiff incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

130. Plaintiff brings this claim against Defendant United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for the negligent acts and omissions of employees of the Federal Bureau of Prisons ("BOP") acting within the scope of their employment.

131. Defendant UNITED STATES owed a statutory and common law duty to supervise its employees, including training, management, and taking disciplinary action when misconduct occurs.

132. Rather than restricting Defendant WILDER's access to incarcerated women during the investigation, BOP officials transferred him to Aliceville's adjacent satellite camp, where staff supervision, video monitoring, and other institutional security measures were more limited.

133. BOP Program Statement 5234.12, § 115.13 requires that BOP facilities, including FCI Aliceville, take certain steps "to protect inmates against sexual abuse" including the use of "video monitoring" where warranted.

134.  BOP Program Statement 5234.12, § 115.13, requires that FCI Aliceville consider specific matters in formulating a plan "to protect inmates against sexual abuse." Those specific matters include consideration of: "All components of the facility's physical plant (including 'blindspots' or areas where staff or inmates may be isolated)[.]"

135.  Defendant WILDER isolated and sexually abused V.B. in a storage closet located within Aliceville FCI.

136.  BOP personnel responsible for monitoring institutional video surveillance observed, or in the exercise of reasonable care should have observed, Defendant WILDER repeatedly isolating V.B. in locations inconsistent with legitimate correctional duties.

137.  BOP staff knew or reasonably should have known that Defendant WILDER's conduct violated mandatory BOP policies governing inmate supervision, staff sexual misconduct, and prisoner safety, yet failed to intervene, report the misconduct, or protect Plaintiff.

138.  Defendant UNITED STATES failed to implement BOP Program Statement 5234.12, § 115.13, which requires that FCI Aliceville use monitoring and protective measures to prevent and uncover sexual abuse.

139.  The negligent acts and omissions of the United States were a direct and proximate cause of Plaintiff's injuries, including physical injury, psychological

trauma, severe emotional distress, anxiety, depression, insomnia, nightmares, humiliation, loss of dignity, diminished quality of life, medical expenses, and other economic and non-economic damages.

140. The United States is liable to Plaintiff under the FTCA for the negligent acts and omissions of its employees acting within the scope of their employment.

## THIRD CLAIM FOR RELIEF
*Plaintiff Against the United States*
(Negligence – Alabama common law – Failure to Take Appropriate Disciplinary Action)

141. Plaintiff incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

142. Plaintiff brings this claim against Defendant United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for the negligent acts and omissions of employees of the Federal Bureau of Prisons ("BOP") acting within the scope of their employment.

143. BOP Program Statement 5324.12 contains directives requiring BOP officials to timely report and investigate any information regarding sexual assault in any of its facilities.

144. Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall

review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id*. § 115.71(b)-(c).

145. Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id*. § 115.71(f).

146. Defendant United States of America had a non-discretionary duty, stated in BOP Policy Statement 5234.12, § 115.71, to conduct a prompt, thorough, and objective investigation of reported sexual abuse and to include in its investigation an effort to determine whether staff actions or failures to act contributed to the abuse.

147. Defendant United States breached its mandatory duties by failing to conduct timely and adequate investigations of prior complaints of sexual misconduct, failing to protect inmates who reported abuse from retaliation, and failing to ensure compliance with mandatory PREA regulations and BOP Program Statements.

148. Defendant United States knew, or reasonably should have known, that its failure to comply with these mandatory duties created a substantial and foreseeable risk that Plaintiff would be subjected to sexual assault, retaliation, and additional physical and psychological injury.

149. Had the United States exercised reasonable care and complied with its mandatory statutory, regulatory, and policy obligations, Defendant WILDER would

have been removed from inmate contact, Plaintiff would not have been repeatedly sexually assaulted, and the injuries described in this Complaint would not have occurred.

150.   The negligent acts and omissions of the United States were a direct and proximate cause of Plaintiff's injuries, including physical injury, psychological trauma, severe emotional distress, anxiety, depression, insomnia, nightmares, humiliation, loss of dignity, diminished quality of life, medical expenses, and other economic and non-economic damages.

151.   The United States is liable to Plaintiff under the FTCA for the negligent acts and omissions of its employees acting within the scope of their employment.

**FOURTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
(Negligence – Alabama common law – Failure to Render Medical Care)

152.   Plaintiff incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

153.   Plaintiff brings this claim against Defendant United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for the negligent acts and omissions of employees of the Federal Bureau of Prisons ("BOP") acting within the scope of their employment.

154.   PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . .

.who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated people who report abuse. *Id.* § 115.67.

155. Following Defendant WILDER's sexual assaults, the United States further breached its duties by failing to provide Plaintiff timely and appropriate medical care, sexually transmitted infection testing, trauma-informed mental health treatment, and confidential access to victim services as required by BOP policy and PREA implementing regulations.

156. Defendant WILDER's wife, who worked as a nurse at FCI Aliceville, verbally abused V.B. for reporting sexual abuse and withheld medical care.

157. Defendant UNITED STATES knew or reasonably should have known Defendant WILDER sexually abused V.B. and that his wife's employment as a nurse at the prison prevented V.B. from receiving medical care.

158. The negligent acts and omissions of the United States were a direct and proximate cause of Plaintiff's injuries, including physical injury, psychological trauma, severe emotional distress, anxiety, depression, insomnia, nightmares, humiliation, loss of dignity, diminished quality of life, medical expenses, and other economic and non-economic damages.

**FIFTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
(Negligence – Alabama common law – Failure to Prevent, Detect, and Intercept Coercive Contraband)

159.   BOP Program Statement 3420.14, Section 8 prohibits BOP employees from "[i]ntroducing or attempting to introduce contraband into or upon the grounds of any federal correctional institution" and doing so "may result in appropriate disciplinary action up to and including removal."

160.   Defendant WILDER, while working as an employee of the BOP, introduced contraband upon the grounds of Aliceville FCI.

161.   Defendant WILDER smuggled alcohol, addictive vape pens, cigarettes and other contraband as coercive "gifts" to inmates, including V.B.

162.   Defendant WILDER used the smuggled contraband to coerce V.B. into sexual abuse.

163.   Defendant WILDER used the contraband to threaten V.B. that she would be disciplined if contraband was found in her possession, thereby ensuring she did not report the rapes.

164.   Smuggled contraband was an integral component of Defendant WILDER's sexual abuse and coercive control of V.B.

165.   Defendant UNITED STATES failed to implement security measures to prevent, detect, and intercept the introduction of coercive contraband at Aliceville FCI.

166. The negligent acts and omissions of the United States were a direct and proximate cause of Plaintiff's injuries, including physical injury, psychological trauma, severe emotional distress, anxiety, depression, insomnia, nightmares, humiliation, loss of dignity, diminished quality of life, medical expenses, and other economic and non-economic damages.

## SIXTH CLAIM FOR RELIEF
*Plaintiff Against the United States*
Federal Tort Claims Act (Vicarious Liability for Sexual Assault and Battery under Alabama Common Law by DEFENDANT WILDER)

167. Plaintiff incorporates by this reference all of the preceding allegations of this Complaint.

168. Plaintiff brings this claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, based upon the wrongful acts and omissions of Defendant WILDER and other employees of the Federal Bureau of Prisons acting within the scope of their office or employment.

169. At all relevant times, Defendant WILDER was employed as a correctional officer at FCI Aliceville. While on duty, in uniform, and exercising the authority entrusted to him by the United States, Defendant WILDER used his official position, access, and control over Plaintiff to isolate, coerce, restrain, and repeatedly sexually assault her.

170. Defendant WILDER intentionally subjected Plaintiff to harmful and offensive contact by forcing her to perform oral sex upon him and by forcibly penetrating her vagina with his penis.

171. V.B. lacked both the legal and volitional capacity to consent to Defendant WILDER's sexual acts. Accordingly, each sexual act constituted an unlawful sexual battery.

172. Such contact with Plaintiff was deeply offensive to her personal dignity and would offend a reasonable person of ordinary sensitivity under the same or similar circumstances.

173. As a direct and proximate result, Plaintiff suffered physical injury, psychological trauma, severe emotional distress, anxiety, depression, humiliation, loss of dignity, diminished quality of life, medical expenses, and other compensable damages.

174. Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees, including Defendant WILDER and other BOP staff, who at the time were "investigative or law enforcement officer[s]" acting within the scope of their office and employment. *See Millbrook v. United States*, 569 U.S. 50, 55 (2013).

**SEVENTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
(Intentional Infliction of Emotional Distress ("IIED") – Alabama common law)

175.   Plaintiff incorporates by this reference all of the preceding allegations of this Complaint.

176.   Plaintiff brings this claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

177.   Through Defendant WILDER and other employees of the Federal Bureau of Prisons acting within the scope of their employment, the United States engaged in extreme and outrageous conduct by knowingly allowing Defendant WILDER to maintain authority over incarcerated women despite prior allegations of sexual abuse, failing to enforce mandatory policies designed to prevent staff sexual abuse, failing to protect Plaintiff from a known and foreseeable risk of sexual violence, failing to provide confidential medical and mental health care following the assaults, and permitting retaliation against Plaintiff after she reported the abuse.

178.   Defendant WILDER further engaged in extreme and outrageous conduct by repeatedly using the authority of his position as a BOP correctional officer to isolate, coerce, sexually assault, and rape Plaintiff while she was confined in federal custody and incapable of legally consenting to sexual activity.

179.   Defendants knew, or acted with reckless disregard of the substantial probability, that such conduct would cause Plaintiff severe emotional distress.

180. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe psychological trauma, anxiety, depression, insomnia, nightmares, humiliation, loss of dignity, emotional distress, diminished quality of life, and other medical, economic, and non-economic damages.

181. The conduct described herein was so extreme and outrageous that it exceeded all bounds of decency and is utterly intolerable in a civilized society.

182. Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts perpetrated by its investigative or law enforcement officers, including correctional officers, that occurred within the scope of their employment under color of federal law.

### EIGHTH CLAIM FOR RELIE
*Plaintiff Against Defendant WILDER*
Sexual Assault and Battery under Alabama Common Law

183. Plaintiff incorporates by this reference each of the preceding allegations of this Complaint as though fully set forth herein.

184. Defendant WILDER intentionally subjected Plaintiff to harmful and offensive physical contact by repeatedly sexually assaulting, battering, and abusing her while exploiting the authority, coercive power, and control he possessed as a BOP correctional officer. Defendant WILDER further used privileges, contraband, threats, and his official position to coerce Plaintiff into sexual acts to which she lacked both the legal and volitional capacity to consent. *See* 18 U.S.C. § 2243(b).

185. As a direct and proximate result of Defendant WILDER's repeated sexual assaults, including his forcing Plaintiff to engage in unprotected oral sex, Plaintiff continues to suffer physical injury, severe emotional distress, humiliation, psychological trauma, and ongoing fear and anxiety that she was exposed to or infected with a sexually transmitted infection.

186. Defendant WILDER's conduct constituted sexual assault and battery under Alabama common law and directly and proximately caused Plaintiff's injuries and resulting damages.

187. Defendant WILDER committed these tortious acts while on duty, in uniform, and while exercising the authority vested in him as a BOP correctional officer.

188. He used the power, access, control, and coercive authority conferred by his employment to isolate, intimidate, and repeatedly sexually assault V.B.

## NINTH CLAIM FOR RELIEF
*Plaintiff Against Defendant WILDER*
(Sex Trafficking under TVPA)

189. Plaintiff incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

190. Plaintiff brings these claims pursuant to the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1591, 1594, and 1595.

191.  The TVPA provides a civil cause of action against any person who recruits, entices, harbors, transports, provides, obtains, maintains, patronizes, or solicits another person for a commercial sex act through force, threats of force, fraud, or coercion, or who knowingly benefits from participation in such a venture. See 18 U.S.C. §§ 1591, 1595.

192.  The TVPA likewise prohibits knowingly obtaining another person's labor or services through force, threats of force, physical restraint, serious harm, abuse or threatened abuse of law or legal process, or any scheme intended to cause a person to believe that refusing to provide labor or services would result in serious harm or physical restraint. 18 U.S.C. § 1589.

193.  A "commercial sex act" includes any sex act for which anything of value is given to or received by any person. 18 U.S.C. § 1591(e)(3).

194.  Plaintiff timely brings these claims pursuant to 18 U.S.C. § 1595.

195.  Defendant WILDER knowingly recruited, enticed, obtained, maintained, patronized, and solicited Plaintiff for commercial sex acts while acting under color of federal law as a correctional officer employed by the Bureau of Prisons.

196.  Defendant WILDER used force, physical restraint, coercion, abuse of legal process, abuse of his custodial authority, and Plaintiff's incarceration to compel Plaintiff to engage in commercial sex acts against her will.

197. Defendant WILDER repeatedly isolated Plaintiff from other inmates and staff, physically restrained and sexually assaulted her, and exploited Plaintiff's reasonable belief that refusing his sexual demands would result in retaliation, disciplinary consequences, loss of privileges, or other serious harm.

198. Defendant WILDER offered Plaintiff things of value, including contraband such as nicotine vaping devices, alcohol, cigarettes, protection from institutional discipline, advance warning of cell searches, and other preferential treatment in exchange for sexual acts.

199. Defendant WILDER also demanded sexual acts in lieu of payment for contraband he smuggled into FCI Aliceville.

200. The sexual acts Defendant WILDER obtained from Plaintiff therefore constituted commercial sex acts within the meaning of 18 U.S.C. § 1591(e)(3).

201. Defendant WILDER knowingly caused Plaintiff to engage in commercial sex acts through force and coercion in violation of 18 U.S.C. § 1591.

202. As a direct and proximate result of Defendant WILDER's violations of the TVPA, Plaintiff suffered physical injury, severe emotional distress, humiliation, psychological trauma, medical expenses, economic damages, and other compensable injuries.

## TENTH CLAIM FOR RELIEF
*Plaintiff Against Defendant FELIX WILDER*
(Forced Labor – 18 U.S.C. §§ 1589 and 1595)

203.  Plaintiff incorporates by reference all preceding allegations.

204.  Defendant WILDER knowingly obtained Plaintiff's labor or services, including compelled sexual services, through force, threats of force, physical restraint, abuse of legal process, abuse of his official authority, and schemes designed to cause Plaintiff reasonably to believe she would suffer serious harm if she refused his demands.

205.  Defendant WILDER exploited Plaintiff's status as an incarcerated woman who lacked the legal ability to leave, refuse his authority, or avoid future contact with him.

206.  Defendant WILDER further obtained Plaintiff's sexual services by conditioning access to contraband, favorable treatment, and protection from institutional discipline upon Plaintiff's submission to his sexual demands.

207.  Defendant WILDER's conduct violated 18 U.S.C. § 1589.

208.  As a direct and proximate result of Defendant WILDER's conduct, Plaintiff sustained the injuries described in this Complaint.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.      An award of compensatory, punitive (as to Defendant WILDER), and nominal damages to Plaintiff in an amount to be determined at trial;

2.      An award to Plaintiff the costs of this suit and reasonable attorneys' fees and litigation expenses; and

3.      For such other and further relief as this Court may deem just and proper.

DATED this 14th day of July, 2026.

Respectfully submitted,

*/s/ Dennis G. Pantazis*
Dennis G. Pantazis
D. G. Pantazis, Jr.
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone:  (205) 314-0531
Email: dgp@wigginschilds.com
        dgpjr@wigginschilds.com

*/s/ Andrew B. Greenlee*
Andrew B. Greenlee, Esq.
Florida Bar No. 96365
ANDREW B. GREENLEE, P.A.
401 East 1st Street, Unit 261
Sanford, Florida 32772
(407) 808-6411
andrew@andrewgreenleelaw.com
*Counsel for Plaintiff*
*Pro Hac Vice Pending*